# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|         Plaintiff, ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 3:06-182 |
| NOUR HALAL MEAT DISTRIBUTOR, ) | |
| INC., d/b/a NOUR HALAL MEATS, ) | JUDGE KIM R. GIBSON |
| NOURA HALAL MEATS, INC., HAMDY ) | |
| FARAG, and GEHAD M. MAGOUB, ) | |
|         Defendants. ) | |

## MEMORANDUM OPINION & ORDER

**Gibson, J.,**

Now before the Court is Plaintiff United States' Motion for Assessment of Forfeitures. Document No. 18. This matter arose after Defendants failed to timely provide a special report that the Secretary of Agriculture ordered, in violation of Section 6 of the Federal Trade Commission Act (hereinafter "FTC Act"), 15 U.S.C. § 46. Defendants also failed to comply with an administrative subpoena *duces tecum* duly issued and served under the provisions of the Packers and Stockyards Act of 1921 (hereinafter "P&S Act"), as amended, 7 U.S.C. § 181 *et seq*. This Court has jurisdiction pursuant to Section 9 of the FTC Act, 15 U.S.C. § 49, which is made applicable to this action by Section 402 of the P&S Act, 7 U.S.C. § 222.

## I. STATEMENT OF FACTS

Pursuant to Section 6 of the FTC Act, 15 U.S.C. § 46, the Grain Inspection, Packers and Stockyards Administration (hereinafter "GIPSA") of the United States Department of Agriculture conducted a study in order to provide information for the use of Congress.[1] The study sought to collect

---

[1] 15 U.S.C. § 46 applies to the jurisdiction, powers, and duties of the Secretary of Agriculture under Section 402 of the P&S Act, 7 U.S.C. § 222.

1

data regarding marketing practices in the livestock and meat industries. Document No. 1-3, p. 2. In accordance with that objective, the Secretary of Agriculture (hereinafter "Secretary"), through his GIPSA representative, issued special orders requiring various businesses, including lamb packers, to furnish information concerning livestock and meat purchases made between October 6, 2002 and March 31, 2005. *Id.* at 7. Federal law required subject entities to maintain proper records of the information sought in the GIPSA study. *See* 7 U.S.C. § 221 (detailing the records that meat packers must keep).

On April 3, 2003, Defendant Hamdy Farag purchased the entire stock of Nour Halal, a Pennsylvania business engaged in buying livestock, manufacturing and preparing meat, and selling the same in interstate commerce. Document No. 16, p. 3; Document No. 1-6, p. 5-6. Defendant Gehad Magoub, the wife of Hamdy Farag, is a vice-president and co-owner of Nour Halal. Document No. 1-6, p. 6. As a meat packer, Nour Halal is subject to the requirements of both the P&S Act and the Department of Agriculture's study. *Id.* GIPSA Administrator James Link (hereinafter "Link") issued Defendants' special order on February 15, 2006, which gave Defendants until April 14, 2006, to comply. Document No. 1-3.

After Defendants' failed to meet that deadline, Link issued a notice of default and subpoena *duces tecum* (hereinafter "the Subpoena") on May 10, 2006. Document No. 1-4. The notice and Subpoena were sent via Federal Express and certified mail and required Defendants to file its special report by May 18, 2006. *Id.* Delivery of both the notice and Subpoena was made to Defendants' business on May 11, 2006. Document No. 1-5. After Defendants failed to comply with the Subpoena, the Government filed on August 17, 2006, a Petition for Order to Show Cause Why its Administrative Subpoena *Duces Tecum* Should Not Be Enforced. Document No. 1.

At an October 23, 2006, hearing on the Petition, the Parties represented to the Court that efforts

to amicably resolve this issue were ongoing and that Defendants had submitted records indicating some good-faith effort to comply with the Subpoena. The Government therefore agreed to toll the period during which any civil penalties were accruing as of that day, and the Court granted the Parties additional time to review those records Defendants had provided. Document No. 9, pp. 7-8. During a February 1, 2007, Status Conference, the Government indicated that the parties had not achieved compliance with the Subpoena and requested that the Court reconvene the Show Cause Hearing in March. Document No. 11. The Government stated that it would accept inability as a complete defense, but requested the opportunity to pursue civil penalties in that event. *Id.* When the show cause hearing reconvened on March 16, 2007, the Government accepted that Defendants could not possibly produce records which were created prior to the April 2003 purchase of Nour Halal. Document No. 16, p. 4. The Government also accepted for review additional records that Defendants brought to the hearing. *Id.* at 3-4. The Court therefor granted the Government ten days to provide notice whether or not the Subpoena had been fully complied with. Id. at 11. The Court further ordered the Government to file a brief within thirty days as to the matter of civil penalties. *Id.* Defendants were granted thirty days beyond the filing of the Government's brief to submit their response.

On March 29, 2007, the Government indicated to the Court that Defendants had failed to fully comply with the Subpoena and that the United States would "not seek any further action to compel compliance" but would "petition this Court by a subsequent filing to assess daily forfeitures." Document No. 17. On May 17, 2007, the Government again noticed the Court of Defendants' noncompliance and filed the motion *sub judice* seeking $14,850.00 in forfeitures. Document Nos. 17 & 18. Accordingly, Defendants had until June 18, 2007, to respond to the motion for forfeitures; to date no such response has been filed.

3

## II. LEGAL STANDARD

Under 15 U.S.C. § 49 and 7 U.S.C. § 222, this Court has the power and authority to enforce administrative subpoenas in the event of a failure to comply. "Judicial review of an administrative subpoena is limited and is to be handled summarily and with dispatch." *In re Office of Inspector Gen.*, 933 F.2d 276, 277 (5th Cir. 1991). *See also F.T.C. v. Scientific Living, Inc.*, 150 F. Supp. 495, 498 (M.D. Pa. 1957) (noting that a "summary proceeding . . . is the approved method" of enforcement). Nonetheless, the United States is not entitled to enforcement; Plaintiff must first make the *prima facie* showing set forth in *United States v. Powell*, 379 U.S. 48, 57-58, 85 S. Ct. 248, 13 L. Ed. 2d 112 (1964).

According to the United States, the *Powell* showing is made if the Government demonstrates that the Subpoena meets "a three part test: (1) the agency has the authority to inquire into this issue; (2) the subpoenaed information is not indefinite; and (3) the information sought is reasonably relevant to the investigation which the agency has authority to conduct." Document No. 2, p. 7 (citations omitted). The Court finds that applicable precedent is not so clear, however. The Government's proposed test was initially formulated to ensure that an administrative subpoena comports with the Fourth Amendment's prohibition on illegal seizures. *See, e.g., United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S. Ct. 357, 94 L. Ed. 401 (1950). In *Powell*, however, the Court had before it only a matter of statutory interpretation and held that the Internal Revenue Service was entitled to enforcement of its administrative subpoenas upon a showing that the "investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the [internal Revenue] Code have been followed." *Powell*, 379 U.S. at 57-58. Although Justice Harlan's formulation of the *prima facie* showing was originally tailored for the Internal Revenue Code, lower

courts have subsequently fit the test to other agencies.[2] *See, e.g.*, *Univ. of Med. & Dentistry v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (Department of Health and Human Services); *In re Admin. Subpoena*, 253 F.3d 256, 263 (6th Cir. 2001) (Department of Justice); *FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (Federal Deposit Insurance Corporation); *United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3d Cir. 1980) (National Institute for Occupational Safety and Health). The federal judiciary is not unanimous, however, and some courts apply the *Morton Salt* test in the absence of any Fourth Amendment objection. *See, e.g.*, *Chao v. Koresko*, Nos. 04-3614, 05-1440, 05-1946, & 05-2673, 2005 U.S. App. LEXIS 22025, at *4 (3d Cir. Oct. 12, 2005) (nonprecedential opinion); *FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981).

In light of this ambiguity, the Court will analyze the United States' petition under both standards. If the United States meets its obligation, the burden then shifts to Defendants to show that the Subpoena is overly broad, burdensome, or that its enforcement would constitute an abuse of the court's process. *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166-67 (3d Cir. 1986); *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 128 (3d Cir. 1981). An abuse of process would be issuing an administrative subpoena "'for an improper purpose, such as to harass the respondent or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.'" *Chao*, 2005 U.S. App. LEXIS 22025, at **4-5 (nonprecedential opinion) (quoting *Powell*, 379 U.S. at 58).

Defendants' burden is a heavy one, for they must "factually oppose the Government's allegations by affidavit. Legal conclusions and memoranda will not suffice." *United States v. Balanced*

---

[2] The Supreme Court perhaps prompted this conflation when it noted a certain convergence in the statutory regimes that control the Internal Revenue Service and the Federal Trade Commission. *Church of Scientology v. United States*, 506 U.S. 9, 15-18, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992).

*Fin. Management, Inc.*, 769 F.2d 1440, 1444 (10th Cir. 1985). *See also Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 218, 66 S. Ct. 494, 90 L. Ed. 614 (1946) (requiring that sufficient reason for not enforcing an administrative subpoena must be set forth affirmatively in affidavits); *Wheeler v. United States*, 459 F. Supp. 2d 399, 402, 406 (W.D. Pa. 2006). Moreover, "expense alone does not constitute burdensomeness, where it is a concomitant of a broad, but valid, investigation." *F.T.C. v. Carter*, 464 F. Supp. 633, 641 (D.D.C. 1979). Further, that a substantial number of subject entities complied with the terms of an agency's special order is evidence that the order is not overly burdensome. *United States v. W. H. Hodges Company, Inc.*, 533 F.2d 276, 278 (5th Cir. 1976) (finding that because twenty-one of the thirty-eight firms required to file special reports complied with the order, the order must not have been overly burdensome). If Defendants fail to carry their burden, it is the Court's duty to enforce the terms of the Subpoena. *FTC v. Standard Am., Inc.*, 306 F.2d 231, 234-35 (3d Cir. 1962).

## III. ANALYSIS

### A. The Subpoena is Enforceable

According to the *Powell* test, the Court must enforce the Subpoena "if the agency can show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry is relevant, that the information demanded is not already within the agency's possession, and that the administrative steps required by the statute have been followed." *Univ. of Med. & Dentistry v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (citation omitted). In support of its petition, the United States has filed the affidavits of Gary McBryde (hereinafter "McBryde"), Director of GIPSA's Industry Analysis Division, Packers and Stockyards Programs (Document No. 1-6), and Sheryl Cates (hereinafter "Cates") of RTI International, a private firm that contracted to collect data for GIPSA's Livestock and Meat Marketing Study (Document No. 1-7). This evidence establishes both that the study was conducted with a

6

legitimate purpose and that the inquiry into Nour Halal's business records was relevant. McBryde's description of the Livestock and Meat Marketing Study and his account of the statutory procedure followed in designing the study also establish that GIPSA's request for Defendants' business records was validated by adherence to the proper administrative steps. Document No. 1-6, ¶¶ 3-5. Although neither affiant expressly indicates that the information requested was not already in GIPSA's possession, the Court, cognizant of the summary nature of these proceedings and Plaintiff's minimal burden, finds that the Government has circumstantially satisfied this element of the *Powell* test. The data sought pertains to private transactions, and the Court's research reveals no regulation requiring that entities such as Nour Halal record with any agency information regarding individual transactions in lamb or weekly profit-and-loss statements. *See* Document No. 1-3, p. 6 (describing the information requested from Nour Halal). Indeed, 7 U.S.C. § 221 requires only that packers and stockyard owners "keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business," not that such records be regularly divulged to the Government. Moreover, the scope of GIPSA's study and the lengths to which the Government has gone in pursing the claim *sub judice* also suggest that the relevant information is not already at Plaintiff's disposal. Lastly, Defendants' concession that they are not in possession of at least some of the subpoenaed records indicates that the appropriate records may have simply never existed.

The Government has also met its burden under the *Morton Salt* standard, according to which administrative subpoenas are enforceable if the Court finds that "(1) the inquiry [was] within the authority of the agency, (2) the demand for production [was not] too indefinite, and (3) the information sought [was] reasonably relevant to the authorized inquiry." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 (3d Cir. 1980). First, it is clear that the Secretary had authority to issue the Subpoena

by virtue of 15 U.S.C. § 49, which provides that "the [Federal trade Commission] shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation."[3] The Secretary then delegated this authority to the GIPSA Administrator pursuant to Section 212(a)(1) of the Department of Agriculture Reorganization Act of 1994, 7 U.S.C. § 6912(a)(1), 7 C.F.R. §§ 2.22(a)(3)(iii) and 2.81(a)(3). Second, GIPSA provided Defendants with sufficiently specific requests that were not too indefinite. The investigation targeted specific information regarding meat transactions and the requests were accompanied by detailed instructions. Document No. 1-3. Lastly, the data on meat sales and purchases, as well as information regarding meat packers' weekly profits and losses was clearly relevant to an investigation of "the use and economic effects of various methods for transferring cattle, hogs, lambs, and meat between successive stages of the livestock and meat marketing system." Document No. 1-6.

The Court also notes that the overwhelming responsiveness of targeted meat packers indicates that the investigation was not overly burdensome. *United States v. W. H. Hodges & Co.*, 533 F.2d 276, 278 (5th Cir. 1976) (affirming a grant of summary judgment where the lower court had found the information requests were not overly burdensome, in part because 21 of 38 respondents timely filed their special reports). According to the Government, 133 of the 136 plants involved in GIPSA's Livestock and Meat Marketing Study filed their reports without apparent difficulty and without recourse to the Courts. Document No. 18, p. 9. There is therefore little plausible argument that GIPSA's request was overly burdensome.

The Court thus finds that the United States has met its obligations under both *Morton Salt* and *Powell*, shifting to Defendants the burden of demonstrating that the Subpoena was "'issued for an

---

[3] Section 49 is applicable to the P&S Act through 7 U.S.C. § 222.

8

improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.'" *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 128 (3d Cir. 1981) (quoting *Powell*, 379 U.S. at 58). Although this list is not exhaustive, *Powell*, 379 U.S. at 58, Defendants' failure to offer any opposition to the Government's petition does nothing to undermine the Subpoena's validity. The Court is therefore left with no choice but to enforce the Subpoena and calculate the extent of daily forfeitures for which Defendants may be liable.

## B. The Court Must Assess Daily Forfeitures

According to Section 10 of the FTC Act, 15 U.S.C. § 50, when a company fails to file a required special report "within the time fixed by the commission for filing the same, and such failure . . . continue[s] for thirty days after notice of such default, the corporation shall forfeit to the United States the sum of $100 for each and every day of the continuance of such failure. . . ." Pursuant to 7 C.F.R. § 3.91(b)(6)(vi), the "[c]ivil penalty for a failure to file required reports, codified at 15 U.S.C. § 50, has a maximum of $110." Because Defendants never fully complied with the terms of the special order, they began to accrue the applicable daily forfeitures thirty days after GIPSA served notice of their default. GIPSA issued a notice of default on May 10, 2006, which was served on Defendants the next day. Document Nos. 1-4 & 1-5.[4] Daily forfeitures therefore began accruing on June 11, 2006. Excluding October 23, 2006, the date on which the Government voluntarily tolled the accrual period, Defendants were in default for 134 days.

---

[4] Addressing the sufficiency of service, one court has held that "under the circumstances of [the FTC's] practical operations registered mail is a method which in itself is 'reasonably certain to inform' those persons affected by the action of the Commission." *United States v. San Juan Lumber Co.*, 313 F. Supp. 703, 709 (D. Colo. 1969). The Court thus finds that the Government met its obligation when it served notice of default on Defendants' place of business via Federal Express and certified mail. Document Nos. 1-4 & 1-5.

9

Absent some flaw in the Subpoena or the procedures followed, the Government's right to the 134 days of forfeitures appears indelible. In *United States v. St. Regis Paper Co.*, the Second Circuit suggested that district courts are without discretion to deny the Government those penalties that have previously attached under the FTC Act. *United States v. St. Regis Paper Co.*, 285 F.2d 607, 614-16 (2d Cir. 1960). Upon review of that decision, the Supreme Court apparently agreed, holding that "[t]his Court cannot forgive statutory penalties once they legally attach. . . ." *St. Regis Paper Co. v. United States*, 368 U.S. 208, 227, 82 S. Ct. 289, 7 L. Ed. 2d 240 (1961). In the wake of *St. Regis*, GIPSA brought suit against various Louisiana stockyard marketing agencies that failed to comply with orders compelling special reports. *United States v. W. H. Hodges & Co.*, 533 F.2d 276, 278-79 (5th Cir. 1976). After the noncompliance extended thirty days beyond service of the notice of default, the Government sought daily forfeitures under 15 U.S.C. § 50. *Id.* at 278. The district court tolled the accrual of the forfeitures during the pendency of the suit and, after granting the Government summary judgment on the merits of its claim, retroactively denied recovery of those forfeitures that had accrued prior to the tolling. The Fifth Circuit reversed, citing *St. Regis* for the proposition that "such a retroactive denial of these forfeitures which had already accrued was beyond the power of the district court." *Id.* at 278-79. Those respondents that chose not to attack the legality of forfeitures under the Declaratory Judgments Act could not rely on the discretion of the district court to reduce their § 50 liability. *Id.* *See also U.S. v. The Riley Company, Inc.*, 474 F. Supp. 181, 184 (N.D. Ill. 1979) ("Once the statutory penalty attaches [under § 50], this court is without authority or discretion to waive any portion of the forfeiture.").

The Court therefore concludes that it is obligated to impose on Defendants forfeitures in the amount of $110 per day for a period of 134 days, for a total of $14,740. An appropriate Order follows.

**AND NOW**, this 22nd day of August, 2007, upon consideration of the Motion of the United States for Assessment of Forfeitures (Document No. 18), **IT IS HEREBY ORDERED** that the Motion is **GRANTED**. Accordingly, the Court assesses forfeitures against Defendants in the amount of $110.00 for each of the 134 days that Defendants were in default of their obligations under the Grain Inspection, Packers and Stockyards Administration's administrative subpoena duces tecum. Forfeitures therefore total $14,740.00.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**